257 P.2d 398

**THOMAS v. BROWN et ux.**

No. 5645.

Supreme Court of Arizona.

May 18, 1953.

Shute & Elsing, of Phoenix, for appellant.

Evans, Hull, Kitchel & Jenckes, Phoenix, for appellees.

PHELPS, Justice.

The appellant herein brought an action against defendants-appellees in three separate counts in the superior court of Maricopa County. In the first and second counts he asked judgment in the sum of $89,750 representing his alleged one-third interest in certain property belonging to a co-partnership formerly existing between him and defendant E. E. Brown; and in the third count he asked that he be restored to his status as an owner of an undivided one-third interest in the assets of said co-partnership. Defendants answered the complaint presenting issues upon which the court rendered its judgment in favor of plaintiff and against defendants in the sum of $28,501, from which plaintiff appeals.

The litigation here involved arose out of a written agreement dated June 2, 1947, between plaintiff and defendant Brown dissolving a partnership theretofore existing between the parties, and transferring all of the assets thereof to defendant consisting of approximately 19,000 acres of patented land and about the same acreage in state land leases together with certain water rights. Also a grazing permit for 18 head of cattle upon the forest reserve. The agreement provides further, among other things, so far as here material, that at any time within three years from the date of the agreement the plaintiff may demand an appraisal of the full value of all the lands held or used by the co-partnership at the date of the dissolution "including patented lands, leases, permits and allotments, or otherwise, with improvements thereon as of this date." The dissolution agreement further provides that the appraisal was to be made by three appraisers, one of whom was to be appointed by plaintiff and one by defendant and the third by plaintiff and defendant jointly. The appraisal was to represent the full value of all the assets of the previous co-partnership at the time the appraisal was made. The appointment

of the appraisers and their report thereon of a total value of said assets were required under the terms of the contract to be made and completed at the earliest practical moment after a demand for appraisal was made. Defendant agreed therein to pay to plaintiff in cash within 60 days after submission of the report of appraisal, a full one-sixth of the amount of the total appraisal less certain deductions provided for in the agreement which are immaterial to this decision.

Thereafter on May 19, 1950, plaintiff made demand upon defendant for an appraisal of the former co-partnership property and notified defendant that plaintiff would name his appraiser within ten days from that date. The appraisers were duly appointed in the manner provided by the agreement of the parties and soon thereafter on July 29, 1950, they met and attempted to agree upon a valuation of said property.

From the outset of the meeting of the appraisers it became manifest that there existed a wide divergence of views between the appraiser appointed by plaintiff and the other two appraisers not only concerning the value of the property to be appraised but also as to the modus operandi of making such appraisal. It soon became apparent to all three appraisers that unanimous agreement of appraisal was impossible. Two of the appraisers, however, did agree upon a value of $232,585.14 as being the full value as of that date, of all of the property previously belonging to the co-partnership and immediately reported the same to plaintiff and defendant. The other appraiser valued the property at $424,163.60.

Plaintiff refused to accept the majority report as a valid appraisal and brought this action asking either a money judgment based upon a valuation of $600,000, or the restoration to him of his interest in the co-partnership.

Plaintiff contends that the court erred:

1. In basing its judgment on the value of the property as of July 29, 1950, the date of the attempted appraisal, instead of its value upon the date of trial;

2. In refusing to admit evidence of value of the property and sales of comparable property in that neighborhood subsequent to July 29, 1950; and

3. In refusing to permit plaintiff to introduce in evidence the books of account pertaining to the income derived from the operation of the properties involved as a cattle ranch.

Defendants on their cross-appeal assign as error the court's ruling that an appraisal made by a majority of the appraisers is not binding upon the parties, under the circumstances in this case.

For convenience we will consider the assignment on cross-appeal first, because under the fact situation in this case the authorities are practically unanimous that unless the contract expressly or impliedly provides for an appraisal by a ma-

jority of the appraisers, an appraisal by any number of appraisers less than the whole is invalid. The reason for the rule is as sound as it is simple. The instant contract provides that said appraisal is "to be made by three appraisers", not by two appraisers, not by a majority of the appraisers appointed, but by three. For the court to treat as valid an appraisal by a majority of the three appraisers appointed when the contract expressly provides that it shall be made by three appraisers would be tantamount to the court rewriting the contract and incorporating therein a provision entirely different from and contrary to that agreed upon by the parties. The ruling of the court therefore was correct. Sutcliffe v. Pawtucket Amusement Co., 51 R.I. 493, 155 A. 578, 77 A.L.R. 833. See also Annotations, 77 A.L.R. 838, et seq.

We will now consider appellant's assignments of error No. 1. Was it error for the court to base its judgment upon the values established as of July 29, 1950? This was the date fixed by the appraisers for the appraisal which was attempted to be made pursuant to the express terms of the contract. When this date was fixed by the appraisers it became as much a part of the contract and entitled to the same certitude as if it had been originally incorporated therein. The contract clearly indicates that the parties thereto at the time of its execution, contemplated an appraisal *at the earliest practical moment after plaintiff made his demand for such appraisal.*

The appraisers acted with due diligence in attempting to discharge their duties. The contract itself expressly provides that the value of the property shall be ascertained as of the date of the appraisal. Again we point out that for the court to fix a date other than July 29, 1950, for establishing values of the property involved would be to make a new contract for the parties with respect thereto. This the court has not the power to do. Plaintiff's right under the contract to demand an appraisal would have expired on June 2, 1950, only thirteen days before he made his demand therefor. In that demand he informed defendants that he would name an appraiser within ten days. It is our view that the parties contemplated that the appraisal would be made on or before June 2, 1950, or at the earliest practical moment thereafter that the circumstances would permit.

Under the terms of the contract between the parties, plaintiff parted with title to his interest in the partnership assets. By its terms he placed them beyond his power to levy a lien against them even to enforce payment of the purchase price thereof. The amount to be paid therefor was to be determined by the appraisers. The appraisers were unable to agree upon the amount to be paid. Approximately three years were permitted to elapse between the date of the contract and plaintiff's demand for an appraisal. In the interim improvements were made. The parties cannot now be placed in status quo. Defendants were justly in-

debted to plaintiff in some amount under the terms of the agreement, fully executed by the latter. Without the aid of the court plaintiff was without a remedy. He invoked the jurisdiction of the court for relief. In order to grant that relief the court had to ascertain the amount of the indebtedness due plaintiff. As above stated, the agreement provides when the value of the assets shall be determined and how the amount due plaintiff based thereon, shall be ascertained. The trial court, in the exercise of its equity jurisdiction found, upon conflicting evidence, that amount to be $28,501. We will not disturb its findings.

■ Having determined that the contract fixed July 29, 1950, as the date for ascertaining the value of the co-partnership assets and the manner in which plaintiff's interest should be determined it follows that the court correctly excluded evidence of the values or the sale price of comparable property in that neighborhood subsequent to that date. Although the case of State Tax Commission v. United Verde Extension Mining Co., 39 Ariz. 331, 6 P.2d 889, involved tax assessments, we believe that case enunciates a principle of law equally applicable to the facts of this case. It was pointed out in that case that assessments of the property based upon subsequent values may prove to be most inequitable. Counsel for plaintiff argues here that plaintiff should be entitled to take advantage of the boom in land prices "during the period when the dispute between the parties was being settled." The record discloses the delay in procuring the appraisal of the property in this case was due wholly to plaintiff's inaction. So far as the records disclose no dispute arose between Thomas and Brown until after July 29, 1950.

■ We further hold that assignment No. 3 is without merit for the reason that counsel agree that the value of the property involved in this litigation for development of high class home sites exceeds by far its value as a cattle ranch. We further hold that any income from a cattle ranch during that period would have no bearing whatever upon its value as subdivision or home site property. Certainly its income as a cattle ranch from 1941 to 1946 is too remote under fluctuating live stock markets to have any bearing whatever upon its value even as a cattle ranch in 1950. The court therefore correctly excluded books of account relating to income during that period.

For the reasons above stated the judgment of the trial court is affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.